IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| THOMAS GEORGE GUIDRY | § | CASE NO: 06-32195 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

**MEMORANDUM OPINION AND ORDER**
**FOR RELIEF FROM COMPLIANCE**

On May 27, 2006, Thomas Guidry filed a petition for chapter 13 bankruptcy. On May 30, 2006, this Court issued an initial order in this case. The Court issues this initial order separately in every chapter 13 case, pursuant to the procedures for administration of chapter 13 bankruptcy cases in the Southern District of Texas. The initial order provides, among other things, that:

> The Internal Revenue Service must send a tax transcript to the chapter 13 trustee, the debtors and the debtor's counsel, with delivery to occur not later than 7 days prior to the initial date set for the § 341 meeting of creditors.

(Initial Order for Case Management, doc. no. 4). The initial order is consistent with Bankruptcy Local Rule ("BLR") 1017(c)(1), which provides:

> At or before seven days before the date first set for the first § 341 meeting of creditors, the Internal Revenue Service must send a tax transcript to the chapter 13 trustee, the debtor and debtor's counsel.

BLR 1017(c)(1). Prior to adoption of the local rule, the Court sought and received public comment in accordance with Fed. R. Bankr. P. 9029(a). As part of the public comment process, the IRS expressed its opposition to the proposed rule. Although the Court considered the IRS's argument in opposition to the local rule, the rule was adopted and the standard case management order is now issued in all chapter 13 cases

- 1 -

On July 7, 2006, the first § 341 meeting of creditors was held in this case. As of that date, the IRS had not sent a tax transcript to any of the parties named in BLR 1017(c)(1). This Court held a hearing at 10:00 a.m. on July 25, 2006, and at that hearing the Court inquired as to why no transcript had yet been filed in this case, despite the local rule and order requiring such. Counsel for the IRS was unable to proffer any reason why the Court's order had not been followed. No relief from the Court's order had been sought.

Counsel requested that it be allowed more time to investigate the rationale of the IRS in not complying with the Court's order. The Court continued the hearing in order to allow the IRS further time to investigate.

On August 4, 2006, the IRS filed a motion for relief from compliance [doc. no. 44] and a supporting brief. The Court issued an order for further briefing. The IRS provided a supplemental brief, and a hearing was held on September 7, 2006. At that hearing, counsel for the IRS expanded upon its written brief with oral argument, and the Court gave counsel leave to file a second supplemental brief. The IRS filed its second supplemental brief on September 11, 2006.

## The Court's Authority to Command Third Parties

The IRS was ordered by the United States Bankruptcy Court for the Southern District of Texas to provide tax transcripts of the Debtor to certain parties. The IRS responded to this order with silence. The IRS did not appeal the order, nor did it initially ask for relief from the order. When called to answer for its actions, the IRS responded that it was not required to comply with the order because the Court had not established personal jurisdiction over the IRS. The IRS offered other reasons for its noncompliance, but the challenge to the Court's jurisdiction is the

appropriate place to begin the analysis of the IRS argument. If the IRS is correct regarding jurisdiction, all other issues are moot.

The IRS cites numerous authorities for the proposition that a judgment rendered against a non-party is unenforceable. In order to become a party, an individual must consent to the Court's in personam jurisdiction, or valid service of process must be rendered. In this case, the IRS did not consent to the Court's jurisdiction, nor was it served with any form of valid process. Thus, the IRS maintains, "until the IRS either is served with process in a bankruptcy case or waives such requirement, either of which will bring it personally within the jurisdiction of the Court, Bankruptcy Local Rule 1017(c)(1) and paragraph 5 of the Court's Initial Order for Case Management of Chapter 13 Case are nullities and void." (IRS Second Supplemental Br., p. 4).

It is fundamental that a judgment rendered when there is no personal jurisdiction is not valid. *Mooney Aircraft, Inc. v. Donnelly,* 402 F.2d 400, 406 (5th Cir. 1968). Personal jurisdiction must be established by consent or by valid service of process. *Omni Capital Intern., Ltd. v. Rudolf Woff & Co.*, 484 U.S. 97, 104 (1987); *Attwell v. LaSalle Nat'l Bank*, 607 F.2d 1157, 1159 (5th Cir. 1979). However, neither of these propositions supports the IRS argument that it is not subject to compliance with this Court's order.

The weakness of the IRS argument is best seen in its conclusion: "If a judgment rendered by a federal court is void when the named party against whom it was entered had not been properly served with process, surely an order directing a person, not a party to a proceeding and who had also not been served with process, to take some action cannot be more effectual." (IRS Second Supplemental Br., p. 4). In a footnote, the IRS states "Certainly a judgment is an 'order' of the court rendering it." *Id.* Essentially, the IRS is making an argument by syllogism which is not supported by logic or case law.

The syllogism is as follows:

Premise 1:  A judgment against a non-party is not effective.

Premise 2:  A judgment is an order of the court.

Conclusion:   An order against a non-party is not effective.

The syllogism fails because a judgment is only one type of order.  However, the conclusion takes a characteristic of some orders (i.e., judgments) and distributes that characteristic to all orders.  This is logically unsupportable; it is also contrary to controlling authority.

In *United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977), the Supreme Court stated that it "has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as is necessary and appropriate" to effectuate justice.[1]  In *New York Telephone*, the FBI sought to install and use pen registers in order to aid an ongoing investigation into an illegal gambling enterprise.  The United States District Court for the Southern District of New York granted the FBI permission to install and use the pen registers, and directed New York Telephone ("NYT") to furnish all information, facilities and technical assistance necessary to covertly employ the pen registers.  NYT chose not to comply fully with the court order.  NYT then moved in the District Court to vacate the portion of the order requiring it to furnish facilities and assistance to the FBI.  NYT argued, among other things, that the All Writs Act did not provide a basis for such order.  The Supreme Court rejected the argument.

---

[1] The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  Title 11 U.S.C. § 105 is "similar in effect to the All Writs Statute" and authorizes bankruptcy courts to issue appropriate orders in aid of their jurisdiction.  H.R. Rep. No. 95-595 at 316 (1977).  *See also U.S. v. Sutton*, 786 F.2d 1305, 1307-08 (5th Cir. 1986).

Quoting itself in *Adams v. United States ex. rel. McCann,* 317 U.S. 269, 273 (1942), the Court wrote "Indeed, unless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *New York Telephone*, at 172-73. The Court then summarized many of its own decisions:

> In *Price v. Johnston,*[334 U.S. 266, 282 (1948)]*,* § 262 [predecessor to the All Writs Act] supplied the authority for a United States Court of Appeals to issue an order commanding that a prisoner be brought before the court for the purpose of arguing his own appeal. Similarly, in order to avoid frustrating the "very purpose" of 28 U.S.C. § 2255, § 1651 furnished the District Court with authority to order that a federal prisoner be produced in court for purposes of a hearing. *United States v. Hayman,* 342 U.S. 205, 220-222 (1952). The question in *Harris v. Nelson,*[394 U.S. 286 (1969)] was whether, despite the absence of specific statutory authority, the District Court could issue a discovery order in connection with a habeas corpus proceeding pending before it. Eight Justices agreed that the district courts have power to require discovery when essential to render a habeas corpus proceeding effective. The Court has also held that despite the absence of express statutory authority to do so, the Federal Trade Commission may petition for, and a Court of Appeals may issue, pursuant to § 1651, an order preventing a merger pending hearings before the Commission to avoid impairing or frustrating the Court of Appeals' appellate jurisdiction. *FTC v. Dean Foods Co.,* 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966).

*Id.* at 373.

Furthermore, in outlining the boundaries of the All Writs Act, the Court wrote that "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, … and encompasses even those who have not taken any affirmative action to hinder justice." *Id.* at 174 (citations omitted).

Based on the Supreme Court's decision in *New York Telephone*, and the authority cited therein, this Court has the power under 11 U.S.C. § 105 to issue orders to individuals that are not

formal parties to the proceeding.  The IRS has no basis to disregard the court's order—the laws of the United States provide the appropriate means to contest an order issued by a federal court.

### 26 U.S.C. § 6103

The IRS further maintains that, even if this Court had the authority to order it to action, the IRS was prohibited from disclosing tax information based on federal statute.  It is not the province of the IRS to interpret statutes and then ignore the orders of a federal court based upon such interpretations.  If the IRS believes that a court order conflicts with the laws of the United States, the IRS should challenge that order in the manner set out by law.

After the July 25th hearing, the IRS filed a motion for relief from compliance claiming that 26 U.S.C. § 6103 prevents the IRS from disclosing tax return information in a bankruptcy proceeding.  The Court rejects this argument.

Title 26 U.S.C. § 6103 provides, in pertinent part:

**(a) General rule.**--Returns and return information shall be confidential, and except as authorized by this title—
> **(1)** no officer or employee of the United States,
> **(2)** no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and
> **(3)** no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (e)(1)(D)(iii), paragraph (6), (12), (16), (19), or (20) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

**(h) Disclosure to certain Federal officers and employees for purposes of tax administration, etc.—**
> **(4) Disclosure in judicial and administrative tax proceedings.**--A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only--

> **(A)** if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;
> **(B)** if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;
> **(C)** if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or
> **(D)** to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.
>
> However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

26 U.S.C. § 6103.

The IRS argues that § 6103(h)(4) only permits disclosure in federal judicial proceedings pertaining to tax administration, and a bankruptcy proceeding is not, per se, such a proceeding. The Court disagrees. A bankruptcy proceeding is a federal judicial proceeding pertaining to tax administration.

Title 26 U.S.C. § 6103(b)(4) defines "tax administration" as follows:

The term "tax administration"--
>    **(A)** means--
>        **(i)** the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and
>        **(ii)** the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and
>    **(B)** includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

- 7 -

26 U.S.C. § 6103(b)(4).

The Fifth Circuit noted that "[t]he courts that have considered whether certain activities qualify as 'tax administration' uniformly have defined the term broadly. And these interpretations seem correct in light of the expansive terms employed by Congress…." *Hobbs v. U.S. ex rel. Russell*, 209 F.3d 408, 410-11 (5th Cir. 2000). *Hobbs* went on to cite other cases in which tax information was admitted under the tax administration exception (§ 6103(h)) even though the proceeding did not involve the determination of tax liability:

> *Rueckert v. IRS,* 775 F.2d 208, 210-12 (7th Cir.1985) (holding that ensuring that a state's internal revenue service employees are free from conflicts of interest that could under mine the integrity of the state's tax collection system are "management" and "supervision" under § 6103(b)(4)(A)(i)); *United States v. Mangan,* 575 F.2d 32, 40 (2d Cir.1978) (approving the admission of federal tax returns under the tax administration exception in criminal proceedings against an IRS agent, even though such proceedings did not involve the determination of tax liability).

*Id* at 411.

*Tavery v. United States*, 32 F.3d 1423 (10th Cir. 1994) is another example of a case in which tax information was legally provided, despite the absence of tax liability issues. In order to determine whether a defendant qualified as an indigent for appointment of counsel, the IRS properly provided tax information of defendant's wife. The *Tavery* Court aptly noted that,

> Nowhere does the statute limit disclosure to instances where taxpayer liability is in issue and the disclosed information relates thereto. To the extent tension may exist between the broad but plain language of the statute and its legislative history, we follow Judge Friendly's application of 'the cannon of construction of the wag who said, when the legislative history is doubtful, go to the statute.' [*United States v.*] *Mangan,* 575 F.2d [32], 40 [2d Cir. 1978].

*Tavery*, 32 F.3d at 1429-30. These cases go beyond the necessary burden in the case of bankruptcy proceedings, because a bankruptcy proceeding does involve a determination of tax liability.

Upon the filing of bankruptcy, a debtor is required to detail all assets and liabilities. Such liabilities include any tax liability, as specifically referenced in Official Schedule E, where the debtor must indicate if there are any "Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8)." (Schedule E).

As a bankruptcy proceeds, the tax liability of the debtor remains in issue. The IRS may file a proof of claim, the proof of claim may be contested, and the tax liability is determined by the court. However, even in the case of an uncontested tax claim, a bankruptcy court still determines tax liability. When a bankruptcy court grants a debtor a discharge (the goal of almost every individual bankruptcy) the court is determining what liabilities will be considered satisfied, and what liabilities remain. The very existence of a tax liability is decided by a bankruptcy court's order for discharge.

If a tax liability is listed as zero, and the IRS does not file a proof of claim, an order for discharge also determines liability. In such a case, the order for discharge mandates that no pre-petition tax claim can ever be brought against the debtor. Liability is determined to be non-existent. In either case, a bankruptcy proceeding is one which determines tax liability.

In the end, it is immaterial whether the IRS files a claim, or a discharge is granted or denied. The substance of a judicial proceeding is determined prospectively, as of the initiation of the action. A debtor files chapter 13 bankruptcy with the intent that all of the debtor's assets and liabilities will be determined and accounted for in a payment plan. This includes tax liability. The intent to adjudicate tax liability is inherent in the bankruptcy filing, regardless of the final outcome of the adjudication.

## BLR 1017(c)(1) and 11 U.S.C. § 521(e)(2)(A)(i)

The IRS argues that BLR 1017(c)(1) is inconsistent with 11 U.S.C. § 521(e)(2)(A). The IRS argues that BLR 1017(c)(1) contradicts § 521 because Congress intended the debtor to bear the burden to produce a tax return for the most recent tax year. BLR 1017, it is argued, improperly shifts that burden to the IRS, contrary to the intent of Congress.

A rule of court procedure contrary to an act of Congress violates 28 U.S.C. § 2071(a), which provides that:

> The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.

28 U.S.C. § 2071(a). The IRS also points to Fed. R. Civ. P. 83(a) which provides that:

> **(a) Local Rules**
> **(1)** Each district court, acting by a majority of its district judges, may, after giving appropriate public notice and an opportunity for comment, make and amend rules governing its practice. A local rule shall be consistent with--but not duplicative of--Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075, and shall conform to any uniform numbering system prescribed by the Judicial Conference of the United States.

FED. R. CIV. P. 83(a).

Fed. R. Bankr. P. 9029(a)(1) has similar language forbidding the duplication of acts of Congress and requiring consistency.

Section 521 of the Bankruptcy Code provides that:

> **(2)(A)** The debtor shall provide--
> **(i)** not later than 7 days before the date first set for the first meeting of creditors, to the trustee a copy of the Federal income tax return required under applicable law (or at the election of the debtor, a transcript of such return) for the most recent tax year ending immediately before the commencement of the case and for which a Federal income tax return was filed; and
> **(ii)** at the same time the debtor complies with clause (i), a copy of such return (or if elected under clause (i), such transcript) to any creditor that timely requests such copy.

- 10 -

11 U.S.C. § 521(e)(2)(A).

The Code requires the debtor to provide a tax return to the trustee. There is no language of exclusion in § 521(e)(2)(A), i.e. the Code does not forbid another party from also providing a tax return. BLR 1017 requires the IRS to provide a tax transcript to the chapter 13 trustee. The local rule does not release the debtor from the requirements of the Code. In essence, the Code requires one thing and the local rule requires something different; neither interferes with the other. Because there is no tension between the local rule and the Code, the Court rejects the IRS's argument that the Code and local rule are inconsistent. In fact, the Court believes that the opposite is true.

One goal of the Bankruptcy Abuse and Consumer Protection Act of 2005 was to improve the administration of bankruptcy cases. The local rule is designed to implement that goal. Neither the statute (i.e., chapter 13 of title 11) nor the national Bankruptcy Rules provide the mechanisms for the day to day implementation of the statute and the rules. Each district with which this Court is familiar has adopted local rules to assist in the implementation of Congressional intent. In the Southern District of Texas, the Court has adopted a uniform procedure that provides for early confirmation of proposed chapter 13 plans. This early confirmation procedure necessarily focuses on the initial § 341 meeting of creditors.

At the conclusion of the initial § 341 meeting, the chapter 13 trustee must make a recommendation with respect to whether the debtor's proposed plan should be confirmed. As required by the recent amendments to the statute, a confirmation hearing is scheduled shortly thereafter.[2]

---

[2] Section 1324(b) mandates that the hearing on plan confirmation may be held not earlier than 20 days and not later than 45 days after the initial meeting of creditors, unless the Court orders an earlier date.

Under the revised Bankruptcy Code, the debtor's failure to provide a tax return prior to the § 341 meeting of creditors has no immediate consequence. Congress mandated that the failure to provide a number of documents (those identified in 11 U.S.C. § 521(a)(1)), would result in the automatic dismissal of a bankruptcy case effective as of the 46th day after the petition. *See* 11 U.S.C. § 521(i). However, the requirement that a tax return be provided is *not* contained within § 521(a)(1). Instead, it is set forth in § 521(e)(2). Section 521(e)(2) applies to all debtors, not just those debtors under chapter 13. Conversely, the Court's local rule (and this Court's initial order) applies only to chapter 13 debtors.

Section 521(e)(2)(B) provides for the dismissal of cases in which a debtor fails to provide a tax return or tax transcript. A motion to dismiss must be filed in order for the Court to consider dismissing a case on these grounds. However, § 521(e)(2)(B) allows a debtor to defeat a motion to dismiss if the debtor demonstrates that the failure to provide the return was due to circumstances beyond the debtor's control. Fed. R. Bankr. P. 1017(f) requires that motions to dismiss (with certain exceptions not relevant here) are governed by Fed. R. Bankr. P. 9014. Rule 9014 only allows for dismissal after reasonable notice and opportunity for hearing. Motions allow for a 20 day response deadline. BLR 9013(b). If the debtor opposes the motion to dismiss, the Court must set and hold a hearing on the motion. Inasmuch as the confirmation hearing is to occur within 20-45 days after the § 341 meeting, the confirmation hearing will often occur prior to the dismissal hearing.

There are 23,000 pending chapter 13 cases in the Southern District of Texas. Few districts in the nation approach such a high chapter 13 caseload. Accordingly, this district has adopted a local rule that is intended to assure that chapter 13 cases can be heard expeditiously. By requiring the IRS to provide a tax transcript prior to the § 341 meeting of creditors in chapter

13 cases, the Court has attempted to insure that chapter 13 cases will be considered in an orderly manner and within the time frame mandated by Congress.  Requiring a tax transcript from the IRS is not inconsistent with the Code.  Rather, it is a one aspect of a belt and suspenders approach that implements Congressional intent.

In its initial brief supporting the motion for relief from compliance, the IRS offered two additional arguments.  First, the IRS claims that the requirements of BLR 1017(c)(1) are so indefinite as to be unenforceable.  Specifically, the IRS claims that the rule does not define the term "tax transcript," nor does the rule specify the years that a transcript should cover.  Second, the IRS claims that the local rule is impractical.  No evidence was offered to support the latter argument, and it is therefore rejected.  Moreover, impracticality does not give license to ignore a court order; the IRS is not above the law.

The IRS is correct in stating that "tax transcript" is not defined. It is also correct that the years to be covered by the tax transcript are not defined.  Nonetheless, ambiguity of a local rule or court order should not be met with non-action.  The law provides the proper means to resolve ambiguous court orders, and the Court is confident that attorneys for the IRS have the knowledge and resources to discover and pursue such means.

Additionally, the Court finds the argument of ambiguity somewhat disingenuous.  As counsel for the IRS mentioned at the August 8, 2006 hearing, the IRS participated in the public meetings leading up to the enactment of the local rule.  Thus, when the IRS writes that "the purpose of the request may best define the appropriate tax transcript.  However, that purpose is not contained in the rule," the Court is skeptical of the IRS's claimed ignorance.  (IRS Initial Brief, p. 9).

In order to aid in future compliance, the Court will resolve the ambiguities in the local rule and standard case management order. The term "tax transcript" means an IRS generated "Return Transcript, which includes most of the line items of a tax return as filed with the IRS." (This definition is from IRS Form 4506-T). Such a tax transcript is to be provided for "the most recent tax year ending immediately before the commencement of the case and for which a Federal income tax return was filed." 11 U.S.C. § 521(e)(2)(A)(i).

### Notice

The IRS also defends its conduct by alleging that the IRS was not properly served with the initial order compelling it to provide the tax transcript. The Court has reviewed the clerk's records and determined that the IRS was not served with the order in this case.

Fed. R. Civ. P. 60 is applicable in bankruptcy via Fed. R. Bankr. P. 9024. Pursuant to that rule, the lack of service in this case is sufficient grounds to excuse the IRS from compliance with paragraph five of the case management order.

The Court is disappointed that the IRS—fully aware of the local rule and the initial order—chose not to comply with the initial order. Nevertheless, the Court finds that the defense has merit. Accordingly, based on the absence of service, the Court finds that the order in this case was ineffective against the IRS.

### Conclusion

"The Constitution sought to divide the delegated powers of the new federal government into three defined categories, legislative, executive and judicial, to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility." *I.N.S. v. Chadha*, 462 U.S. 919, 951 (1983). Within this scheme, "[i]t is emphatically the province and

duty of the judicial department to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803).

In this case, the IRS took it upon itself to say what the law is regarding the disclosure of tax information in a bankruptcy case. The IRS read 26 U.S.C. § 6103, interpreted it, and then acted in accordance with its own interpretation of the law. This interpretation—to not provide tax transcripts in bankruptcy cases—is directly at odds with the local rules of the Bankruptcy Court of the Southern District of Texas. In rationalizing its behavior, the IRS explained that it again took it upon itself to say what the law is concerning the power of this Court to order third parties to action. And again, the IRS's interpretation of the law was at odds with the interpretation of this Court.

Today, a procedural defect provides refuge for the IRS. Future circumstances may not prove so fortuitous. There is a certain "respect due [to] coordinate branches of government." *Baker v. Carr*, 369 U.S. 186, 217 (1962). The IRS seems to have forgotten that "[a]ll officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it." *United States v. Lee*, 106 U.S. 196, 220 (1882). The law prescribes the correct manner to challenge rules and orders of court. To ignore a Court's order is not an option.

Signed at Houston, Texas, on November 27, 2006.

_____
MARVIN ISGUR
United States Bankruptcy Judge